Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396
Attorneys for Plaintiff Alexander Huynh

Ivy T. Ngo (SBN 249860)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:  (303) 757-3300
Facsimile:   (720) 213-5131
Email: ngoi@fdazar.com
Attorneys for Plaintiffs Erica Cooper and Jeri Connor

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER HUYNH, ERICA COOPER, AND JERI CONNOR, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>QUORA, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 5:18-cv-07597-BLF<br><br>Hon. Beth Labson Freeman<br><br>**CONSOLIDATED FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br>(1)  Violations of Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*<br>(2)  Violations of California's Customer Records Act, California Civil Code § 1798.80 *et seq.*<br>(3)  Negligence<br>(4)  Deceit by Concealment<br>(5)  Invasion of Privacy<br>(6)  Breach of Confidence<br>(7)  Breach of Contract<br>(8)  Breach of Implied Covenant of Good Faith and Fair Dealing<br>(9)  Violation of New Jersey Consumer Fraud Act<br>(10) Violation of Colorado Consumer Protection Act<br>(11) Violation of Colorado Security Breach Notification Act<br>    **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiffs Alexander Huynh, Erica Cooper, and Jeri Connor ("Plaintiffs") bring this action for themselves and on behalf of all persons who reside in the United States and who created an account with Quora, Inc. ("Defendant" or "Quora"), whose personal or financial information was accessed, compromised, or stolen in the 2018 Data Breach ("Quora Users").

2.      Launched in June 2010, Quora is a question-and-answer social media platform, where questions are asked, answered, edited, and organized by its community of Users. As of September 2018, Quora had a user audience of 300 million monthly unique users, up from the 200 million reported in 2017.[1]

3.      Quora requires its Users to provide personally identifiable information ("PII") upon creating an account via Defendant's website or mobile phone application.  Users reasonably expect Defendant to maintain strict confidentiality of the PII in Quora's possession.  Throughout the course of its business, Quora has collected and maintained an extensive amount of its Users' personal information including, without limitation account and user information (*e.g.* name, email, IP, user ID, encrypted passwords, user account, settings, personalization data), public actions and content including drafts (*e.g.* questions, answers, comments, blog posts, upvotes), data imported from linked networks (*e.g.* contacts, demographic information, interests, access tokens), non-public actions (*e.g.* answer requests, downvotes, thanks), and non-public content (*e.g.* direct messages, suggested edits).  However, on information and belief, Defendant failed, and continues to fail, to provide adequate protection of its Users' personal and confidential information and has egregiously failed to provide sufficient and timely notice or warning of potential and actual cybersecurity breaches to its Users.

4.      In an ongoing investigation, Quora recently revealed that its Users' personal information was subject to a massive data security breach in November 2018, **affecting approximately 100 million Quora Users' PII** ("2018 Data Breach").  Quora released a

---

[1] *See* Marketing Land, *With new funding & a growing userbase, Quora makes its pitch to advertisers* (April 27, 2017) *available at* https://marketingland.com/quora-makes-pitch-to-advertisers-213185 (last visited December 18, 2018).

1    statement on its blog on December 3, 2018, publicly exposing details of the 2018 Data Breach for

2    the first time.  According to the statement, Defendant learned of the data breach as early as

3    November 30, 2018[2], but has not yet directly informed or notified all Quora Users that their PII

4    may be compromised as a result of the breach.  Rather, Quora states that it began "logging out all

5    Quora users" who may be affected and invalidating their passwords, without providing Users

6    with any reason for being logged out and not being able to log back in and Quora is still "in the

7    process of notifying users whose data has been compromised."[3]

8          5.      Quora, Inc. maintains a privacy policy that makes specific representations to its

9    Users regarding its affirmative duty to protect Users' PII, specifically informing Users that they

10   are in control of who has access to their PII, and that Quora, Inc. has implemented safeguards to

11   protect Users' PII ("Privacy Policy").

12         6.      As a result of Defendant's failure to maintain adequate security measures and

13   timely security breach notifications, Quora Users' personal and private information has been

14   compromised and remains vulnerable.  In fact, according to Quora, "the investigation is still

15   ongoing" and they are still working "to gain a full understanding of what happened."[4]  Further,

16   Quora Users have suffered an ascertainable loss in that they must undertake additional security

17   measures, some at their own expense, to minimize the risk of future data breaches including,

18   without limitation, canceling credit cards associated with, and changing passwords to, Quora as

19   well as networks linked to their Quora accounts, such as Facebook. Google, Twitter and

20   LinkedIn.  However, due to Quora's ongoing and incomplete investigation, Quora Users have no

21   guarantee that the above security measures will in fact adequately protect their personal

22   information.  As such, Plaintiff and other Class Members have an ongoing interest in ensuring

23   that their personal information is protected from past and future cybersecurity threats.

24

25

26         [2] Adam D'Angelo, *Quora Security Update* (December 3, 2018), *available at*
     https://blog.quora.com/Quora-Security-Update (last visited December 18, 2018).

27         [3] *Id.*

28         [4] *Id.*

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**THE PARTIES**

7.     Plaintiff Alexander Huynh is a citizen of the state of California, residing in Piedmont, California.  Plaintiff has been a Quora User for the last four years and provided Defendant with PII including his name, account password, and contact information including his email address. Plaintiff is informed and believes that his PII was compromised as a result of the 2018 Data Breach because he received an email from "The Quora Team" on the evening of December 3, 2018, stating, "information of yours may have been compromised," including, among other things, his "email, IP, user ID, encrypted password, user account settings, [and] personalization data."[5]  Further, Plaintiff's Quora account was logged out by a party other than Plaintiff and, based on the email from Quora, Plaintiff understands that those accounts affected by the breach were logged out by Quora.

8.     Plaintiff Erica Cooper is a resident and citizen of New Jersey. Plaintiff Cooper opened a Quora account and has used it for over four years. Through the opening and use of this account, Plaintiff Cooper has entrusted Defendant with her PII for all relevant time periods.

9.     Plaintiff Jeri Connor is a resident and citizen of Colorado. Plaintiff Connor opened a Quora account and has used it for over a year. Through the opening and use of this account, Plaintiff Connor has entrusted Defendant with her PII for all relevant time periods.

10.     Defendant Quora, Inc. ("Quora") is a corporation organized and in existence under the laws of the State of Delaware and registered to do business in the State of California.  Quora's corporate headquarters are located at 650 Castro Street, Suite 450, Mountain View, California 94041.

11.     At all relevant times, Defendant was and is engaged in the business of operating a social networking website and mobile application in Santa Clara County and throughout the United States of America.

**JURISDICTION**

12.     This is a class action.

---

[5] The Quora Team "Re: Quora Security Update."  Email message to Alexander Huynh, sent December 3, 2018 at 5:16 p.m. PDT. (Attached hereto as Exhibit A).

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution or laws of the United States and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that, as to each Class defined herein:

    a)     the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

    b)     this is a class action involving 100 or more class members; and

    c)     this is a class action in which at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

14.     The Court has personal jurisdiction over Defendant, which has at least minimum contacts with the State of California because its headquarters are located there, and it has conducted business here and has availed itself of California's markets through its social networking websites and mobile applications.

<center>VENUE</center>

15.     Quora, through its online Q&A platform, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

16.     In addition, Defendant is headquartered in Mountain View, California, has conducted business in this district, and has availed itself of California's markets through its marketing and operations of its social networking websites and mobile applications.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

<center>FACTUAL ALLEGATIONS</center>

17.     Quora created and operates a user-based Q&A platform through its website and mobile application that facilitate private and public communications, including messages, posts, and photographs, from and between its Users, as well as providing access to certain account information to third party applications.  Quora purports to allow its users the ability to share and restrict information based on their own specific criteria. In September 2018, Quora reported having more than 300 million active users.[6]

---

[6] *See* https://techcrunch.com/2017/04/21/uniquorn/ (last visited Dec. 14, 2018)

18.     Quora requires its Users to provide personally identifiable information ("PII") upon creating an account via Defendant's website or mobile phone application, and Users expect Defendant to maintain strict confidentiality of the PII in Quora's possession.   Throughout the course of its business, Quora has collected and maintained an extensive amount of its Users' personal information including, without limitation, Users' names, email addresses, other contact information, encrypted passwords, private messages, photographs, and data imported from linked networks.  Quora Users provide this personal information to Quora in reliance on Defendant's assurances as to the protection and security of its Users' PII.

19.     However, on information and belief, Defendant failed, and continues to fail, to provide adequate protection of its Users' personal and confidential information and has egregiously failed to provide sufficient and timely notice or warning of potential and actual cybersecurity breaches to its Users.

20.     At all relevant times, Quora has made assurances to its Users that its Users' privacy and security is of utmost importance to Quora, and its Users have relied on those assurances in providing Quora with their PII.  In fact, Quora's Privacy Policy states, "The security of your information is important to us. Quora has implemented safeguards to protect the information we collect."[7]  Additionally, the Privacy Policy provides that Quora, Inc. will only share Users' personal information in specified scenarios: 1) With Quora's service providers who use the information to provide services to it; 2) With affiliates and subsidiaries of Quora; 3) Metrics and aggregated data with third party advertisers or researchers; 4) During business transfers of ownership (i.e., merger, sale, etc.); 5) When Quora is required by law to do so; and, 6) "[W]here individuals have otherwise consented.  Clearly, Quora has failed to provide the security consistently promised to its Users and the data breach does not fall within any of the specified scenarios for release of Users' information discussed in Quora's privacy policy.

21.     The types of information compromised in the 2018 Data Breach are highly valuable to identity thieves. The names, email addresses passwords, security question answers,

---

[7] Quora, *Privacy Policy,* https://www.quora.com/about/privacy (last visited Dec. 4, 2018).

1   and other valuable PII can all be used to gain access to a variety of existing accounts and

2   websites.

3          22.     Despite these assurances, Quora recently revealed that its Users' personal

4   information was subject to a massive data security breach.  Quora released a statement on

5   December 3, 2018, publicly exposing details of the 2018 Data Breach for the first time.

6   According to the statement, Defendant learned of the data breach as early as November 30,

7   2018[8], but has not yet directly informed or notified all Quora Users that their PII may have been

8   compromised as a result of the breach.  Rather, Quora has stated that it began "logging out all

9   Quora users" who may have been affected and invalidating their passwords. This action was

10  taken without providing Quora Users with any reason for being logged out and not being able to

11  log back in, and Quora is still "in the process of notifying Users whose data has been

12  compromised."[9]

13         23.     Defendant has directly acknowledged its duty to safeguard Quora Users' PII. In its

14  December 3, 2018 blog post announcing the Quora Data Breach, Quora CEO Adam D'Angelo

15  declared that "***[i]t is our responsibility to make sure things like this don't happen, and we failed***

16  ***to meet that responsibility***. We recognize that in order to maintain user trust, we need to work

17  very hard to make sure this does not happen again. There's little hope of sharing and growing the

18  world's knowledge if those doing so cannot feel safe and secure, and cannot trust that their

19  information will remain private."[10]  Addressing the Quora Data Breach, Leigh-Anne Galloway,

20  the cybersecurity resilience lead at Positive Technologies, stated that "***the data sets that have***

21  ***been exposed here are huge***" and are not just the usual user credential leakage, but "also ***their***

22  ***social network accounts*** and potentially their private personal information that was posted on

23  Quora."[11] In response to the Quora Data Breach, Galloway recommended that all organizations

24  ───────────────

        [8] *Quora Security Update*, *supra* fn. 2.

25      [9] *Id.*

26      [10] *Id.* (emphasis added).

27      [11] *Forbes*, With A Strong Monetization Platform, How Much Can Quora Be Worth?
     (June 25, 2018), *available at https://www.forbes.com/sites/greatspeculations/2018/06/25/with-
     a-strong-monetization-platform-how-much-can-quora-be-worth/#5bb9e18f3180* (last visited

28   December 18, 2018) (emphasis added).

1    should prepare for the worst and get ready to deal with an almost inevitable breach.[12]

2        24.    In 2017, Quora was valued at approximately $1.8 billion.[13] Although Quora

3    started out with no revenue source and relied entirely on venture capital, in 2016, it introduced

4    advertisements to its platform in order to begin generating revenue.[14] In 2017, Quora doubled its

5    advertisement sales team, with Puja Ramani, head of business marketing at Quora explaining that

6    "[t]his is how we're going to monetize. We've been really happy with the results so far and have

7    doubled the ads team. We're going to be investing a lot in this area of the business."[15]  A study

8    earlier this year found that Quora may generate as much as $112 million in revenue through

9    advertisements in 2018 alone.[16]

10       25.    Quora's advertisement revenue is dependent on the engagement of Users,

11   including Defendant's ability to collect personal information about its Users. Thus, when Users

12   signed up to join Quora, they were entering into a transaction – a value-for-value exchange – in

13   which they agreed to provide content and PII that Defendant could use, subject to the Users'

14   privacy restrictions. Because exclusive access to such content and information confers a

15   competitive advantage, there is a "first user" value to the content and information. That value has

16   now been lost due to the Quora Data Breach.

17       26.    One study found that the average consumer in the U.S. can make $240 per year

18   monetizing his or her personal data for digital advertising.[17]  Another study in 2018 found that

19   social media advertising revenue currently amounts to $67.97 billion and that the average revenue

20   per internet user currently amounts to approximately $22.84.[18]

---

21   [12] *Id.*

22   [13] *Id.*

23   [14] Marketing Land, *supra* fn 1.

24   [15] *Id.*

25   [16] *Id.*

26   [17] Medium, *How Much is Your Data Worth? At Least $240 per Year. Likely Much More*, *available at* https://medium.com/wibson/how-much-is-your-data-worth-at-least-240-per-year-likely-much-more-984e250c2ffa (last visited December 11, 2018).

27   [18] Statista, *Social Media Advertising*, *available at*
28   https://www.statista.com/outlook/220/100/social-media-advertising/worldwide#market-revenuePerInternetUser (last visited December 11, 2018).

27.     Additionally, the PII compromised in the Quora Data Breach is highly valuable to identity thieves. The names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, photos, and videos, and other valuable personal information can all be used to gain access to a variety of other existing accounts and websites.

28.     Identity thieves can also use the PII to harm Plaintiffs and the other Class members through embarrassment, blackmail, or harassment in person or online or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits. A Presidential identity theft report from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration. In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts, open new ones, and dispute charges with individual creditors.[19]

29.     To put identity theft into context, the 2013 Norton Report – based on one of the largest consumer cybercrime studies ever conducted – estimated that at that time, the global price tag of cybercrime was around *$113 billion* with the average cost per victim being $298 dollars.[20]

30.     The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the personal information they obtain. Indeed, to protect themselves, Plaintiffs and the other Class members will need to remain vigilant against unauthorized data use for years and decades to come.  It is axiomatic that once stolen,

---

[19] U.S. FTC, *The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan*, (April 2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last visited December 11, 2018).

[20] Norton by Symantec, *2013 Norton Report, available at* https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf (last visited December 10, 2018).

1  personal information can be used in a number of different ways. One of the most common

2  method of illicit use is that the information is offered for sale on the dark web, a heavily

3  encrypted part of the internet that makes it difficult for authorities to detect the location or owners

4  of a particular website. Due to its concealed and sometimes disguised nature, coupled with the

5  intentional use of special applications to maintain anonymity, the dark web is a haven for a

6  plethora of illicit activity, including the trafficking of stolen personal information captured via

7  data breaches or hacks.[21]  One 2018 study found that an individual's online identity is worth

8  approximately $1,170 on the dark web.[22]

9         31.    Personal information can also be used by scammers to target victims using

10 *phishing scams*.[23]  Phishing is when scammers use personal information they have obtained about

11 victims to send fraudulent emails, texts, or copycat websites to get victims to share additional

12 valuable personal information – such as account numbers, Social Security numbers, or login IDs

13 and passwords.[24]  Scammers use victims' information, including PII, to steal a victims' money,

14 identity, or both.[25]  Scammers also use phishing emails to get access to a victim's computer or

15 network, then install programs like ransomware that can lock a victim out of important files on

16 their computer.[26]  According to one Federal Bureau of Investigation study, scammers collected

17 more than $676 million in 2017 alone through two types of phishing scams: "Business Email

18 Compromise" and "Email Account Compromise."[27]

19

20 [21] Experian, *What is the Dark Web?* (April 8, 2018), *available at*
   https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last visited December 10,
   2018). *See also* Brian Hamrick, *The dark web: A trip into the underbelly of the internet*,
21 WLWT News (Feb. 9, 2017), http://www.wlwt.com/article/the-dark-web-a-trip-into-the-
   underbelly-of-the-internet/8698419 (last visited December 10, 2018).
22 [22] TOP10VPN, Dark Web Market Price Index (US Edition) (February 27, 2018),
   *available at* https://www.top10vpn.com/privacy-central/privacy/dark-web-market-price-index-
23 feb-2018-us/ (last visited December 10, 2018).

24 [23] U.S. FTC, *Phishing* (July 2017), *available at*
   https://www.consumer.ftc.gov/articles/0003-phishing (last visited December 12, 2018).
25
   [24] *Id.*
26 [25] *Id.*

27 [26] *Id.*

28 [27] U.S. Federal Bureau of Investigation, *2017 Internet Crime Report*, *available at*
   https://pdf.ic3.gov/2017_IC3Report.pdf (last visited December 12, 2018).

32.     Matt Aldridge, senior solutions architect at the cybersecurity firm Webroot, in response to the Quora Data Breach, opined that *"[c]yber attackers will use information gained from social media sites to target employees through highly personalized attacks such as spear phishing*. . . . through these types of attacks, malicious actors will trick employees into handing over their usernames and passwords, allowing them access to the company's network."[28]

33.     As a result of Defendant's failure to maintain adequate security measures and timely security breach notifications, Quora Users' PII has been compromised and remains vulnerable.  In fact, according to Quora, "the investigation is still ongoing" and they are still working "to gain a full understanding of what happened."[29]   Quora Users have suffered an ascertainable loss in that they must now undertake additional security measures, most at their own expense, to minimize the risk of future data breaches including, without limitation, canceling credit cards associated with their Quora accounts and changing passwords to Quora, Facebook, Google, Twitter, LinkedIn, and all other linked accounts.  However, due to Quora's ongoing and incomplete investigation, Quora Users have no guarantee that the above security measures will in fact adequately protect their personal information.  As such, Plaintiffs and other Class Members have an ongoing interest in ensuring that their personal information is protected from this past and future cybersecurity threats.

34.     The insufficient security policies and procedures implemented by Defendant are a material fact that a reasonable consumer would take into consideration when deciding whether to create an account and provide Defendant with personal and confidential information.  Had Plaintiff and other Class Members known that Defendant failed to employ necessary and adequate protection of their personal information, they would not have created a Quora account or would have otherwise limited the PII shared with Quora.

## CLASS ACTION ALLEGATIONS

35.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure

---

[28] Forbes, *supra* fn. 11 (emphasis added).

[29] *Quora Security Update*, *supra* fn. 2.

23(a), 23(b)(2), 23(b)(3), and 23(c)(4). This action easily satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

36.     The Class and Subclasses are defined as:

**Nationwide Class**:  All individuals residing in the United States who registered for an account, at any time, with Quora, Inc. whose personal or financial information was accessed, compromised, or stolen in the 2018 Data Breach (the "Nationwide Class" or "Class").

**California Subclass:** All members of the Nationwide Class who registered for an account with Quora, Inc. and reside in the State of California.

**New Jersey Subclass:** All members of the Nationwide Class who registered for an account with Quora, Inc. and reside in the State of New Jersey.

**Colorado Subclass**: All members of the Nationwide Class who registered for an account with Quora, Inc. and reside in the State of Colorado.

37.     Collectively, the Nationwide Class, the California Subclass, the New Jersey Subclass, and the Colorado Subclass, and their class members, will be referred to herein as the "Class" and "Class Members," except where otherwise noted.

38.     Excluded from the Class are:

a)     Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors;

b)     the Judge to whom this case is assigned and the Judge's staff;

c)     any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and,

d)     those persons who have suffered personal injuries as a result of the facts alleged herein.

Plaintiffs reserve the right to amend the Class and Subclass(es) definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

39.     Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the persons who comprise the Class are so numerous that joinder is impracticable.  The disposition of the claims of these Class Members in

1   a single action will provide substantial benefits to all parties and to the Court.  The Class

2   Members are readily identifiable from information and records in Defendant's possession,

3   custody, or control.

4          40.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class in that

5   Plaintiffs, like all Class Members, has maintained a Quora account at various times during the

6   duration of the class period.  The representative Plaintiffs, like all Class Members, has been

7   damaged by Defendant's misconduct in that they have had, or will be required to, undertake

8   additional security measures, at their own time and expense, to minimize the risk of future data

9   breaches.  Furthermore, because there is a common factual bases of Defendant's misconduct to

10  all Class Members, there is a common thread resulting in injury to all Class Members.

11         41.    <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiff

12  and the Class that predominate over any question affecting only individual Class Members.

13  These common legal and factual issues include, but are not limited to, the following:

14         a)     Whether Defendant owed a duty of care to Plaintiffs and Class Members with

15                respect to the security of their personal information;

16         b)     Whether Defendant had a legal and/or contractual duty to use reasonable security

17                measures to protect Plaintiffs' and Class Members' personal information;

18         c)     Whether Defendant took reasonable steps and measures to safeguard Plaintiffs'

19                and Class Members' personal information;

20         d)     Whether Defendant breached its duty to exercise reasonable care in handling

21                Plaintiffs' and Class Members' personal information;

22         e)     Whether Defendant's acts and omissions described herein give rise to class claims

23                of negligence and/or deceit by concealment;

24         f)     Whether Defendant's security procedures and practices violated *California*

25                *Business & Professions Code* §§ 17200 *et seq*.;

26         g)     Whether Defendant's security procedures and practices violated *California Civil*

27                *Code* §§ 1798.90 *et seq.;*

28         h)     Whether Defendant's conducted violated the New Jersey Consumer Fraud Act,

N.J. Stat. §§ 56:8-1, *et seq.*;

i)       Whether Defendant's conduct violated the Colorado Consumer Protection Act, Colo Rev. Stat. 6-1-101, *et seq.*;

j)       Whether Defendant's conduct violated the Colorado Security Breach Notification Act, Colo Rev. Stat. 6-1-716, *et seq.*;

k)       Whether Defendant's conduct violated § 5 of the FTC Act, 15 U.S.C. § 45, *et seq.*;

l)       Whether Defendant knew or should have known of the 2018 Data Breach and the timing of when Quora knew or should have known of the Data Breach;

m)      Whether Defendant had a duty to promptly notify Class Members that their personal information was, or potentially could be, compromised; and,

Whether Plaintiffs and other Class Members are entitled to damages or equitable relief, including but not limited to, a preliminary and/or permanent injunction.

42.      <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of complex class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

43.      <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the value of the individual Class Members' claims, when compared to the costs of investigation and prosecution of those claims, makes it more probable than not that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact will also be a superior method to address these claims as opposed to multiple individual actions or piecemeal litigation. In this regard, class treatment will conserve the resources of the courts and the litigants and will

1   promote consistency and efficiency of adjudication.

2   <center>**FIRST CAUSE OF ACTION**</center>

3   <center>**(Violation of California Business & Professions Code § 17200, *et seq*.)**</center>

4   <center>**(On behalf of Plaintiffs and on behalf of the Nationwide Class, or in the alternative,**</center>

5   <center>**on behalf of the California Sub-Class)**</center>

6        44.     Plaintiffs incorporate by reference the allegations contained in each and every

7   paragraph of this Complaint.

8        45.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

9   Nationwide Class, or in the alternative, on behalf of the California Sub-Class.

10        46.     As a result of their reliance on Defendant's representations and omissions, Quora

11   Users utilizing its Q&A platform through its website and mobile application suffered an

12   ascertainable loss due to Defendant's failure to provide adequate protection of Quora Users'

13   personal and confidential information. This loss was also the direct result of Qoura's failure to

14   provide timely and sufficiently informative notice and warning of potential and actual

15   cybersecurity breaches.

16        47.     California Business & Professions Code § 17200 prohibits acts of "unfair

17   competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

18   deceptive, untrue or misleading advertising."

19        48.     Plaintiffs and Class Members are reasonable consumers who expected Defendant

20   to vehemently protect the personal information entrusted to Quora and to be informed by

21   Defendant of potential and actual cybersecurity vulnerabilities as soon as Defendant became

22   aware of such threat.

23        49.     Defendant's acts and omissions were intended to induce Plaintiffs and Class

24   Members' reliance on Defendant's explicit and implied guarantee that their personal information

25   was secure and protected, to increase the number of Quora Users, and, ultimately, to increase

26   Defendant's revenues. Plaintiffs and the Class Members were deceived by Defendant's failure to

27   properly implement adequate, commercially reasonable security measures to protect their

28   personal information, and Defendant's failure to promptly notify them of the security breach.  As

1    a result, Defendant's conduct constitutes "fraudulent" business acts or practices.

2         50.    Defendant's conduct was and is likely to deceive consumers.

3         51.    In failing to implement adequate security procedures and protocols to protect

4    Plaintiffs and Class Members' personal information, and to promptly notify Plaintiffs and Class

5    Members of potential and actual security threats, Defendant has knowingly and intentionally

6    concealed material facts and breached its duty not to do so.

7         52.    Defendant was under a duty to Plaintiffs and Class Members to protect Quora

8    Users' personal information and promptly notify Quora Users of potential and actual security

9    threats, and other omitted facts alleged herein, because:

10        a)     Defendant was in a superior position to know the specifics of a potential or actual

11               security breach; and

12        b)     Defendant actively concealed information known to it regarding potential and

13               actual security breaches affecting Quora Users' account information.

14        53.    The facts Defendant concealed from or did not disclose to Plaintiffs and Class

15   Members are material in that a reasonable person would have considered them to be important in

16   deciding whether to utilize Defendant's Q&A platform through its website and mobile

17   application or cancel, change or otherwise modify their account information.  Had Plaintiffs and

18   other Class Members known that Defendant failed to employ necessary and adequate protection

19   of their personal information and would fail to timely notify them of potential security breaches,

20   they would not have created a Quora account or would not have provided PII to Quora.

21        54.    By their conduct, Defendant has engaged in unfair competition and unlawful,

22   unfair and fraudulent business practices.  Defendant's unfair or deceptive acts or practices

23   occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial

24   portion of the purchasing public.

25        55.    As a direct and proximate result of Defendant's unlawful, unfair and deceptive

26   practices, Plaintiff and Class Members will continue to suffer actual damages.

27        56.    Defendant has been unjustly enriched and should be required to make restitution to

28   Plaintiffs and Class Members pursuant to §§ 17203 and 17204 of the California Business &

1  Professions Code.

2  <div align="center">**SECOND CAUSE OF ACTION**</div>

3  <div align="center">**(Violation of the California Customer Records Act, Cal. Civ. Code § 1798.80,** *et seq.***)**</div>

4  <div align="center">**(On behalf of Plaintiff Huynh and the California Subclass)**</div>

5       57.      Plaintiff Huynh incorporates by reference the allegations contained in each and

6  every paragraph of this Complaint.

7       58.      Plaintiff Huynh brings this cause of action on behalf of himself and on behalf of

8  the California Subclass.

9       59.      The California Legislature enacted Civil Code § 1798.81.5 "to ensure that

10  personal information about California residents is protected."  The statute requires that any

11  business that "owns, licenses, or maintains personal information about a California resident …

12  implement and maintain reasonable security procedures and practices appropriate to the nature of

13  the information, to protect the personal information from unauthorized access, destruction, use,

14  modification, or disclosure."

15       60.      Defendant is a "business" as defined by Cal. Civil Code § 1798.80(a).

16       61.      Plaintiff and California Subclass Members are "individual[s]" as defined by Cal.

17  Civil Code § 1798.80(d).

18       62.      The personal information taken in the data breach was "personal information" as

19  defined by Cal. Civil Code § 1798.80(e) and 1798.81.5(d), which includes:

20       "information that identifies, relates to, describes, or is capable of being associated with, a
         particular individual, including, but not limited to, his or her name, signature, Social
21       Security number, physical characteristics or description, address, telephone number,
         passport number, driver's license or state identification card number, insurance policy
22       number, education, employment, employment history, bank account number, credit card
         number, debit card number, or any other financial information, medical information, or
23       health insurance information."

24       63.      The breach of the personal information of 100 million Quora users was a "breach

25  of the security system" of Defendant as defined by Cal. Civil Code § 1798.82(g).

26       64.      By failing to implement reasonable security measures which would appropriately

27  secure the personal information of Quora Users, Defendant violated Cal. Civil Code § 1798.81.5.

28

<div align="center">CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</div>

65.     In addition, by failing to immediately notify all affected Quora Users that their personal information had been acquired or may have been acquired by unauthorized persons in the data breach, Defendant violated Cal. Civil Code § 1798.82.  Defendant's failure to immediately notify Quora Users of the breach caused Class Members to suffer damages because they have lost the opportunity to immediately:

a)     buy identity protection, monitoring, and recovery services;

b)     flag asset, credit, and tax accounts for fraud, including reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the Internal Revenue Service;

c)     purchase or otherwise obtain credit reports; monitor credit, financial, utility, explanation of benefits, and other account statements on a monthly basis for unrecognized credit inquiries, Social Security numbers, home addresses, charges, and/or medical services;

d)     place and renew credit fraud alerts on a quarterly basis;

e)     routinely monitor public records, loan data, or criminal records;

f)     contest fraudulent charges and other forms of criminal, financial and medical identity theft, and repair damage to credit and other financial accounts;

g)     and, take other steps to protect themselves and recover from identity theft and fraud.

66.     Because it violated Cal. Civil Code § 1798.81.5 and 1798.82, Defendant "may be enjoined" under Cal. Civil Code § 1798.84(e).

67.     Plaintiff requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures to protect its Users' personal information, including, but not limited to, ordering that Defendants:

a)     engage third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

b)      engage third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices;

c)      audit, test, and train its security personnel regarding any new or modified procedures;

d)      purge, delete and destroy, in a secure manner, Quora Users data not necessary for its business operations;

e)      conduct regular database scanning and securing checks consistent with prudent industry practices;

f)      periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices;

g)      receive periodic compliance audits by a third party regarding the security of the computer systems, cloud-based services, and application software Defendant uses to store the personal information of current and former Quora Users;

h)      meaningfully educate its current and former Quora Users about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and

i)      provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

68.      As a result of Defendant's violation of Cal. Civ. Code § 1798.81.5, Plaintiff and Class Members have incurred and will incur damages, including but not necessarily limited to:

a)      the loss of the opportunity to control how their personal information is used;

b)      the diminution in the value and/or use of their personal information entrusted to Defendant for the purpose of deriving services from Defendant and with the understanding that Defendant would safeguard their personal information against theft and not allow access and misuse of their personal information by others;

c)      the compromise, publication, and/or theft of their personal information; out-of-pocket costs associated with the prevention, detection, and recovery from identity theft

and/or unauthorized use of financial and medical accounts;

d)       lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity data misuse;

e)       costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets;

f)       unauthorized use of compromised personal information to open new financial and/or health care or medical accounts; tax fraud and/or other unauthorized charges to financial, health care or medical accounts and associated lack of access to funds while proper information is confirmed and corrected;

g)       the continued risk to their personal information, which remain in Defendant's possession and are subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the personal information in their possession; and

h)       future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the personal information compromised as a result of the data breach for the remainder of the lives of the Class Members.

69.      Plaintiff seeks all remedies available under Cal. Civil Code § 1798.84, including actual and statutory damages, equitable relief, and reasonable attorneys' fees.  Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION

### (Negligence)

### (On behalf of Plaintiffs and on behalf of the Nationwide Class)

70.      Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

1   71.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the

2   Nationwide Class.

3   72.     Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable

4   care in obtaining, retaining, securing, safeguarding, deleting and protecting their personal

5   information in their possession from being compromised, lost, stolen, accessed and misused by

6   unauthorized persons.  This duty included, among other things, designing, implementing,

7   maintaining and testing Defendant's security systems and protocols, consistent with industry

8   standards and requirements, to ensure that Plaintiff's and Class Members' personal information in

9   Defendant's possession was adequately secured and protected.  Defendant further owed a duty to

10  Plaintiffs and Class Members to implement processes that would detect a breach of its security

11  system in a timely manner and to timely act upon warnings and alerts, including those generated

12  by its own security systems.

13  73.     Defendant owed a duty of care to Plaintiffs and Class Members because they were

14  foreseeable and probable victims of any inadequate security practices.  Defendant solicited,

15  gathered, and stored the personal data provided by Plaintiff and Class Members in the regular

16  course of its business.  Defendant knew that a breach of its systems would cause damages to

17  Plaintiff and Class Members, and Defendant had a duty to adequately protect such sensitive

18  personal information.

19  74.     Similarly, Defendant owed a duty to Plaintiffs and Class Members to timely

20  disclose any incidents of data breaches, where such breaches compromised the personal

21  information of Plaintiffs and Class Members.  Plaintiffs and Class Members were foreseeable and

22  probable victims of any inadequate notice practices. Defendant knew that, through its actions and

23  omissions, it had caused the sensitive personal information of Plaintiffs and Class Members to be

24  compromised and accessed by unauthorized third parties yet failed to mitigate potential harm to

25  Quora Users by providing timely notice of the security breach.

26  75.     Defendant breached the duties owed to Plaintiffs and Class Members by failing to

27  exercise reasonable care in the adoption, implementation, and maintenance of adequate security

28  procedures and protocols and by failing to timely notify Plaintiffs and Class Members of potential

and actual security breaches. Defendant's breach of the duties owed to Plaintiff and Class Members caused injuries to Plaintiffs and Class Members, including but not limited to:

     a)    theft of their personal information;

     b)    costs associated with the detection and prevention of identity theft;

     c)    costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the aforementioned data breaches, including without limitation finding fraudulent charges, cancelling and reissuing credit cards and bank accounts, purchasing credit monitoring and identity theft protection, and the stress, nuisance and annoyance of dealing with all issues resulting from the data breaches;

     d)    the imminent and impending injury flowing from potential fraud and identity theft posed by the unauthorized control and use of their personal information by third parties;

     e)    damages to and diminution in value of their personal information entrusted to Defendants with the understanding that Defendants would safeguard their data against theft and not allow access and misuse of their data by others; and

     f)    the continued risk to their personal information, which remains in Defendant's and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect data in their possession.

76. But for Defendant's negligent and wrongful breach of the duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been harmed and could have taken remedial measures to protect their personal information.

77. Plaintiffs and Class Members are entitled to and seek actual damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**(Deceit by Concealment, Cal. Civ. Code §§ 1709, 1710)**

**(On behalf of Plaintiff Huynh and the California Subclass)**

78. Plaintiff Huynh incorporates by reference the allegations contained in each and every paragraph of this Complaint.

79.     Plaintiff Huynh brings this cause of action on behalf of himself and on behalf of the California Subclass.

80.     Defendant had an obligation to disclose to all class members that their Quora accounts and PII were an easy target for hackers and Defendant was not implementing measures to protect them.

81.     Defendant did not do these things. Instead, Defendant willfully deceived Plaintiff and the Class by concealing the true facts concerning their data security, which Defendant was obligated to, and had a duty to, disclose. Additionally, Quora made numerous representations to ensure users that their PII and other data was safe, and Quora was dedicated to maintaining that security.

82.     Had Defendant disclosed the true facts about its poor data security, Plaintiff and the Class would have taken measures to protect themselves. Plaintiff and the Class justifiably relied on Defendant to provide accurate and complete information about Defendant's data security, and Defendant did not.

83.     Alternatively, given the security holes in Defendant's services and Defendant's refusal to take measures to detect those holes, much less fix them, Defendant simply should have shut down their current service. Independent of any representations made by Defendant, Plaintiff and the Class justifiably relied on Defendant to provide a service with at least minimally adequate security measures and justifiably relied on Defendant to disclose facts undermining that reliance.

84.     Rather than cease offering a clearly unsafe and defective service or disclosing to Plaintiff and the Class that its services were unsafe and users' PII was exposed to theft on a grand scale, Defendant continued on and concealed any information relating to the inadequacy of their security.

85.     These actions are "deceit" under Cal. Civil Code § 1710 in that they are the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

86.     As a result of this deceit by Defendant, it is liable under Cal. Civil Code § 1709 for "any damage which [Plaintiff and the Class] thereby suffer[]."

87.     As a result of this deceit by Defendant, the PII of Plaintiff and the Class were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their PII was disclosed to third parties without their consent. Plaintiff and Class Members also suffered diminution in value of their PII in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

88.     Defendant's deceit as alleged herein is fraud under Civil Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff and the Class of "legal rights or otherwise causing injury." As a result, Plaintiff and the Class are entitled to punitive damages against Defendants under Cal. Civil Code § 3294(a).

## FIFTH CAUSE OF ACTION

### (Invasion of Privacy, Cal. Const. Art. 1., Sec. 1)

### (On behalf of Plaintiffs and on behalf of the Nationwide Class)

89.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

90.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class.

91.     Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and all Class members' claims.

92.     The California Constitution expressly provides for a right to privacy. Cal. Const. Art. I, Sec. 1.

93.     Defendant's Privacy Policy for all times relevant to this matter provided that Users' PII would not be released to third parties without express consent.

94.     Absent their express consent, Plaintiffs' and Class Members used Quora under the impression that PII was safeguarded and would not be provided to or stolen by, third parties.

95.     Plaintiffs and Class Members had an interest in the protection and non-

dissemination of their PII that Defendant electronically stored, including the right not to have that PII stolen and used for profit and/or malicious purposes.

96.     Absent the express consent of Quora Users, Defendant intentionally intruded on Plaintiffs' and Class Members' private life, seclusion, and solitude, which is protected under the California constitution as well as common law.

97.     Defendant's wrongful conduct constitutes breach of the social norms underpinning the constitutionally-protected right to privacy.

98.     Defendant's wrongful conduct harmed Plaintiffs and Class Members.

99.     As a direct and proximate result of Defendant wrongful conduct, Plaintiffs and Class members have suffered injury and are entitled to appropriate relief, including injunctive relief and damages.

<div align="center">

**SIXTH CAUSE OF ACTION**

**(Breach of Confidence)**

**(On behalf of Plaintiffs and on behalf of the Nationwide Class)**

</div>

100.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

101.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class.

102.     This claim is asserted against Defendant for breach of confidence concerning the PII that Plaintiffs and the other Class members provided to Defendant in confidence.

103.     At all times during Plaintiffs' and Class Members' interactions with Defendant, Defendant was fully aware of the confidential nature of the PII that Plaintiffs and Class Members shared with Defendant.

104.     As alleged herein and above, Defendant's relationship with Plaintiffs and Class Members was governed by Defendant's Privacy Policy and the expectation that Plaintiffs' and Class members' PII would be collected, stored, and protected in confidence by Defendant, and not disclosed to unauthorized third parties.

105.     Plaintiffs and Class Members provided their respective PII to Defendant with the

1   explicit and implicit understanding that Defendant would protect and not permit that PII to be

2   disseminated to any unauthorized third parties.

3        106.    Defendant voluntarily received in confidence Plaintiffs' and Class Members' PII

4   with the understanding that that PII would not be disclosed or disseminated to the public or any

5   unauthorized third parties.

6        107.    Due to Defendant's failure to prevent, detect, and stop the Quora Data Breach

7   from occurring, Plaintiffs' and Class Members' PII was disclosed and misappropriated to

8   unauthorized malicious third parties beyond their confidence and without their express

9   permission.

10       108.    As a direct and proximate cause of Defendant's actions and inactions, Plaintiffs

11  and Class Members have suffered damages.

12       109.    But for Defendant's disclosure of PII in violation of the parties' understanding that

13  it would be held in confidence, Plaintiffs' and Class Members' PII would not have been

14  compromised, stolen, and viewed by unauthorized persons. Defendant's disclosure was a direct

15  and legal cause of the theft of Plaintiffs' and Class Members' PII, as well as their resulting

16  damages.

17       110.    The injury and harm Plaintiffs and Class Members suffered was the reasonably

18  foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and Class Members' PII.

19  Defendant knew its computer systems and technologies for accepting and securing Plaintiffs' and

20  Class Members' PII had numerous security vulnerabilities, but Defendant continued to collect,

21  store, and maintain Plaintiffs' and Class Members' PII without fixing the vulnerabilities.

22       111.    As a result of Defendant's misconduct, Plaintiffs' and Class Members' PII was

23  compromised – placing them at a greater risk of identity theft and subjecting them to identity

24  theft and fraud – and disclosed to unauthorized, malicious, third parties without their consent.

25  Plaintiffs and Class Members also suffered diminution in value of their PII in that it became

26  easily available to hackers on the dark web. Plaintiffs and Class Members have also suffered

27  consequential out-of-pocket losses for procuring credit freezes or protection services, identity

28  theft monitoring, and other expenses relating to identity theft losses or protective measures.

**SEVENTH CAUSE OF ACTION**

**(Breach of Contract)**

**(On behalf of Plaintiffs and on behalf of the Nationwide Class)**

112.   Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

113.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class.

114.   At all relevant times, Defendant and Plaintiffs mutually assented to, and therefore were bound by the version of Quora's Privacy Policy (the "Contract") that was operative at the time each of the Plaintiffs and the other Class members joined Quora.

115.   Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and Class Members' claims.

116.   Throughout the Class Period, Defendant affirmatively stated in the Contract that it would not disclose Quora Users' PII without consent and/or notice. Defendant further represented in the Contract that it would utilize sufficient data security protocols and mechanisms to protect Quora Users' PII.

117.   Nothing in the Contract informed and obtained Users' meaningful and lawfully-obtained consent to share their content and information with malicious third parties without their consent.

118.   Thus, per the provision above, the Contract did not authorize Defendant to share Plaintiffs' and Class Members' PII with malicious third-parties without their consent by failing to provide a service with at least minimally adequate security measures.

119.   Plaintiffs and Class Members fully performed their obligations under the Contract.

120.   Defendant breached the Contract it entered into with Plaintiffs and Class Members by failing to safeguard and protect their PII, and improperly allowing malicious third-parties to access their PII without their consent.

121.   As a direct and proximate result of Defendant's breaches of the Contracts between Defendant and Plaintiffs and the Class Members, Plaintiffs and the Class Members sustained

actual losses and damages as described in detail supra. Plaintiffs and Class Members suffered

injury in fact and lost money or property. In addition, Plaintiffs and Class Members' PII was

taken and is in the hands of those who will use it for their own advantage, or is being sold for

value, making it clear that the hacked information is of tangible value.

**EIGHTH CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

**(In the Alternative)**

**(On behalf of Plaintiffs and on behalf of the Nationwide Class)**

122.    Plaintiffs incorporate by reference the allegations contained in each and every

paragraph of this Complaint.  This claim is pleaded in the alternative to the claim for breach of

contract.

123.    Plaintiffs bring this cause of action, in the alternative, on behalf of themselves and

on behalf of the Nationwide Class.

124.    Defendant's choice-of-law provision establishes that California law applies to

Plaintiffs' and the other Class members' claims.

125.    Under California law, there is in every contract or agreement an implied promise

of good faith and fair dealing. Such a duty is read into contracts and functions as a supplement to

the express contractual covenants, in order to prevent a transgressing party from engaging in

conduct which (while not technically transgressing the express covenants) frustrates the other

party's rights to the benefit of the contract. Thus, all claims must be read in the context of, and

give way to, Plaintiffs' and Class Members' rights to the benefit of the contract.

126.    Defendant made specific representations to Plaintiffs and Class Members mutually

regarding Defendant's protection of Users' PII in its Privacy Policy that was operative at the time

each of the Plaintiffs and Class Members joined Quora.

127.    A covenant of good faith and fair dealing attaches to Defendant's Privacy Policy.

128.    Throughout the Class Period, Defendant affirmatively stated in its Privacy Policy

that it would not disclose Quora Users' PII without their consent. Defendant further represented

in its Privacy Policy that it would utilize sufficient data security protocols and mechanisms to

1   protect Quora Users' PII.

2       129.    Plaintiffs and the Class Members fully performed their obligations under the

3   contractual provisions in the Privacy Policy.

4       130.    Under the terms of the Privacy Policy, Plaintiffs and Class Members were entitled

5   to receive the benefits promised to them by Defendant, including that Defendant would protect

6   their PII, not disclose their PII to third parties without their consent, and keep their PII secure.

7       131.    Defendant was uniquely able to control the rights of Users, including Plaintiffs

8   and Class Members, concerning their privacy, ownership, and control of their content and

9   information, and whether that content and information would be accessible to third parties

10  without their consent.

11      132.    Defendant surreptitiously took measures to frustrate and undercut Plaintiffs' and

12  the other Class members' contractual rights concerning their privacy, ownership, and control over

13  their PII, and whether their content and information would be accessible to third-parties without

14  their consent. By doing so, Defendant deprived Plaintiffs and the other Class Members of the

15  benefits under their contracts with Defendant, including the Privacy Policy.

16      133.    As a direct and proximate result of Defendant's breaches of its duty of good faith

17  and fair dealing, Plaintiffs and Class Members sustained actual losses and damages as described

18  in detail supra. Plaintiffs and Class Members suffered injury in fact and lost money or property.

19  In addition, their PII was taken and is in the hands of those who will use it for their own

20  advantage, or is being sold for value, making it clear that the hacked information is of tangible

21  value.

**NINTH CAUSE OF ACTION**

**(Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq.)**

**(On behalf of Plaintiff Cooper and the New Jersey Subclass)**

25      134.    Plaintiff Cooper ("New Jersey Plaintiff") hereby repeats, realleges, and

26  incorporates by reference each and every allegation contained above as though the same were

27  fully set forth herein.

28      135.    Plaintiff Cooper brings this cause of action on behalf of herself and on behalf of

the New Jersey Subclass who are all New Jersey residents.

136.   Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

137.   Defendant sells "merchandise" as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

138.   The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, et seq., prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on that concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

139.   Defendant's unconscionable and deceptive practices include:

a)   Failing to implement and maintain reasonable security and privacy measures to protect New Jersey Plaintiff's and the other New Jersey Subclass members' PII, which was a direct and proximate cause of the Quora Data Breach;

b)   Failing to identify foreseeable security and privacy risks and remediate identified security and privacy risks, which was a direct and proximate cause of the Quora Data Breach;

c)   Failing to comply with common law and statutory duties pertaining to the security and privacy of New Jersey Plaintiff's and the other New Jersey Subclass members' PII, which was a direct and proximate cause of the Quora Data Breach;

d)   Misrepresenting that it would protect the privacy and confidentiality of New Jersey Plaintiff's and the other New Jersey Subclass members' PII, including by implementing and maintaining reasonable security measures;

e)   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of New Jersey Plaintiff's and the other New Jersey Subclass members' PII;

f)   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of New Jersey Plaintiff's and the other New Jersey Subclass members' PII.

140.   Defendant's representations and omissions were material because they were likely

1    to deceive reasonable consumers about the adequacy of Defendant's data security and ability to

2    protect the confidentiality of consumers' PII.

3        141.    Defendant intended to mislead New Jersey Plaintiff and the other New Jersey

4    Subclass members and induce them to rely on Defendant's misrepresentations and omissions.

5        142.    Defendant acted intentionally, knowingly, and maliciously to violate New Jersey's

6    Consumer Fraud Act, and recklessly disregarded New Jersey Plaintiff's and the other New Jersey

7    Subclass members' rights.

8        143.    As a direct and proximate result of Defendant's unconscionable and deceptive

9    practices, New Jersey Plaintiff and the other New Jersey Subclass members have suffered and

10   will continue to suffer injury, ascertainable losses of money or property, and monetary and non-

11   monetary damages – including from fraud and identity theft, time, and expenses related to

12   monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud

13   and identity theft, and the loss of value of their PII.

14       144.    New Jersey Plaintiff and the other New Jersey Subclass members seek all

15   monetary and non-monetary relief allowed by law, including injunctive relief, other equitable

16   relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**TENTH CAUSE OF ACTION**

**(Violation of Colorado Consumer Protection Act, Colo. Rev. Stat 6-1-101, *et seq*.)**

**(On behalf of Plaintiff Connor and the Colorado Subclass)**

20       145.    Plaintiff Connor hereby repeats, realleges, and incorporates by reference each and

21   every allegation contained above as though the same were fully set forth herein.

22       146.    Plaintiff Connor ("Colorado Plaintiff") brings this cause of action on behalf of

23   herself and the Colorado Subclass who are all Colorado residents.

24       147.    Defendant is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6). Colorado

25   Plaintiff and the other Colorado Subclass members are actual or potential consumers of the

26   products and services offered by the Defendant.

27       148.    Defendant, operating in Colorado, engaged in deceptive, unfair, and unlawful

28   trade acts or practices in the course of its business, vocation, or occupation, in violation of Colo.

Rev. Stat. § 6-1-105, including, but not limited to, the following:

a)      Knowingly misrepresenting and fraudulently advertising material facts pertaining to its products and services to the Colorado Subclass by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Colorado Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

b)      Knowingly misrepresenting material facts pertaining to its products and services to the Colorado Subclass by representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Colorado Subclass members' PII, in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

c)      Knowingly omitting, suppressing, and concealing the material fact of the inadequacy of its privacy and security protections for Colorado Subclass members' PII (intending to induce others to enter into a transaction), in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

d)      Engaging in deceptive, unfair, and unlawful trade acts or practices, in violation of Colo. Rev. Stat. § 6-1-105(3), by failing to maintain the privacy and security of Colorado Subclass members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, including Colo. Rev. Stat. § 6-1-713.5, resulting in the Quora Data Breach.

149.    Under Colo. Rev. Stat. § 6-1-713.5, Defendant "maintains, owns, or licenses personal identifying information of an individual residing in [Colorado]," and thus is required to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal identifying information and the nature and size of the business and its operations." Defendant failed to maintain reasonable security procedures and practices appropriate for the nature and size of its business and operation.

150.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to

1    protect the confidentiality of consumers' PII.

2        151.    Defendant intended to mislead Colorado Plaintiff and the other Colorado Subclass

3    members and induce them to rely on Defendant's misrepresentations and omissions.

4        152.    Had Colorado Plaintiff and the other Subclass members known that Defendant

5    failed to employ necessary and adequate protection of Colorado Plaintiff's and the other

6    Colorado Subclass members' personal information, they would not have created a Quora account,

7    or they would have limited the PII they shared with Defendant.

8        153.    Defendant engaged in the above unfair and deceptive acts or practices in the

9    course of its business.

10       154.    Defendant engaged in above unfair and deceptive acts or practices with malice

11   and/or willfulness.

12       155.    As a direct and proximate result of Defendant's unfair and deceptive practices,

13   Colorado Subclass members suffered injuries to legally protected interests, including their legally

14   protected interest in the confidentiality and privacy of their PII.

15       156.    The above unfair and deceptive practices and acts by Defendant were immoral,

16   unethical, oppressive, and unscrupulous. These acts caused substantial injury to Colorado

17   Plaintiff and the other Colorado Subclass members that they could not reasonably avoid. This

18   substantial injury outweighed any benefits to consumers or to competition.

19       157.    Defendant knew or should have known that its computer systems and data security

20   practices were inadequate to safeguard Colorado Subclass members' PII, and that risk of a data

21   breach or theft was high. Defendant's actions in engaging in the above-named unfair practices

22   and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect

23   to the rights of the Colorado Subclass members.

24       158.    Colorado Plaintiff and the other Colorado Subclass members seek relief under

25   Colo. Rev. Stat. §§ 6-1-101, *et seq*., including, but not limited to, compensatory damages,

26   statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

27                        **ELEVENTH CAUSE OF ACTION**

28   **(Violation of Colorado Security Breach Notification Act, Colo. Rev. Stat 6-1-716, *et seq*.)**

**(On behalf of Colorado Plaintiff and the Colorado Subclass)**

159.    Colorado Plaintiff hereby repeats, realleges, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

160.    Colorado Plaintiff brings this cause of action on behalf of herself and on behalf of the Colorado Subclass who are all Colorado residents.

161.    Defendant is a business that owns or licenses computerized data that includes PII as defined by Colo. Rev. Stat. §§ 6-1-716(1) and 6 1-716(2). The PII of Colorado Plaintiff and the Colorado Subclass at issue includes the kinds of PII covered by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-716(2).

162.    Under Colo. Rev. Stat. § 6-1-713.5, Defendant "maintains, owns, or licenses personal identifying information of an individual residing in [Colorado]," and thus is required to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal identifying information and the nature and size of the business and its operations."

163.    As alleged in detail *supra*, Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of PII, and protect that information from unauthorized access, destruction, use, modification, or disclosure, which resulted in the Quora Data Breach.

164.    As a direct and proximate result of Defendant's violations of Colo. Rev. Stat 6-1-716, *et seq.*, Colorado Plaintiff and the other Colorado Subclass members suffered damages, as described herein.

165.    Colorado Plaintiff and the other Colorado Subclass members seek relief under Colo. Rev. Stat. § 6-1-716(4), including actual damages and equitable relief.

## RELIEF REQUESTED

166.    Plaintiffs, on behalf of themselves, and all others similarly situated, requests the Court enter judgment against Defendant, as follows:

(a)     An order certifying the proposed Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class

1        Counsel;

2        (b)    An order enjoining Defendant from further unfair and deceptive business

3               practices regarding the maintenance and protection of Quora Users'

4               personal information;

5        (c)    An award to Plaintiffs and the Class for compensatory, exemplary, and

6               statutory damages, including interest, in an amount to be proven at trial;

7        (d)    A declaration that Defendant must disgorge, for the benefit of the Class, all

8               or part of the ill-gotten revenues they collected from their conduct alleged

9               herein, or make full restitution to Plaintiffs and Class Members;

10       (e)    An award of attorneys' fees and costs, as allowed by law;

11       (f)    An award of attorneys' fees and costs pursuant to California Code of Civil

12              Procedure § 1021.5;

13       (g)    An award of pre-judgment and post-judgment interest, as provided by law;

14              and

15       (h)    Such other relief as may be appropriate under the circumstances.

16                              **DEMAND FOR JURY TRIAL**

17       167.   Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of

18   California Local Rule 3-6, Plaintiffs demand a trial by jury of any and all issues in this action so

19   triable.

20   Dated:  February 12, 2019                    Respectfully submitted,

21                                                 Capstone Law APC

22                                          By: /s/ Mark Ozzello
                                                 Mark A. Ozzello
23                                               Tarek H. Zohdy
                                                 Cody R. Padgett
24                                               Trisha K. Monesi
                                                 Attorneys for Plaintiff Huynh
25
                                                 Franklin D. Azar & Associates, P.C.
26
                                          By: /s/ Ivy T. Ngo
27                                               Ivy T. Ngo

28                                               Attorneys for Plaintiffs Cooper and Connor

                                          Page 34

# EXHIBIT A

---------- Forwarded message ---------
From: **The Quora Team** <noreply@quora.com>
Date: Mon, Dec 3, 2018 at 17:16
Subject: Quora Security Update
To:



Dear Alex Z. Wynn,

We are writing to let you know that we recently discovered that some user data was compromised as a result of unauthorized access to our systems by a malicious third party. We are very sorry for any concern or inconvenience this may cause. We are working rapidly to investigate the situation further and take the appropriate steps to prevent such incidents in the future.

**What Happened**

On Friday we discovered that some user data was compromised by a third party who gained unauthorized access to our systems. We're still investigating the precise causes and in addition to the work being conducted by our internal security teams, we have retained a leading digital forensics and security firm to assist us. We have also notified law enforcement officials.

While the investigation is still ongoing, we have already taken steps to contain the incident, and our efforts to protect our users and prevent this type of incident from happening in the future are our top priority as a company.

**What information was involved**

The following information of yours may have been compromised:

- Account and user information, e.g. name, email, IP, user ID, encrypted password, user account settings, personalization data

- Public actions and content including drafts, e.g. questions, answers, comments, blog posts, upvotes

- Data imported from linked networks when authorized by you, e.g. contacts, demographic information, interests, access tokens (now invalidated)

- Non-public actions, e.g. answer requests, downvotes, thanks

- Non-public content, e.g. direct messages, suggested edits

Questions and answers that were written anonymously are not affected by this breach as we do not store the identities of people who post anonymous content.

**What we are doing**

While our investigation continues, we're taking additional steps to improve our security:

- We're in the process of notifying users whose data has been compromised.
- Out of an abundance of caution, we are logging out all Quora users who may have been affected, and, if they use a password as their authentication method, we are invalidating their passwords.
- We believe we've identified the root cause and taken steps to address the issue, although our investigation is ongoing and we'll continue to make security improvements.

We will continue to work both internally and with our outside experts to gain a full understanding of what happened and take any further action as needed.

**What you can do**

We've included more detailed information about more specific questions you may have in our help center, which you can find here.

While the passwords were encrypted (hashed with a salt that varies for each user), it is generally a best practice not to reuse the same password across multiple services, and we recommend that people change their passwords if they are doing so.

**Conclusion**

It is our responsibility to make sure things like this don't happen, and we failed to meet that responsibility. We recognize that in order to maintain user trust, we need to work very hard to make sure this does not happen again. There's little hope of sharing and growing the world's knowledge if those doing so cannot feel safe and secure, and cannot trust that their information will remain private. We are continuing to work very hard to remedy the situation, and we hope over time to prove that we are worthy of your trust.

The Quora Team

This email was sent by Quora (650 Castro Street #450, Mountain View, CA 94041). You are receiving this email because you are registered on Quora.com with this email address, and this is a necessary legal or administrative message to our users.https://www.quora.com/